**THE UNITED STATES OF AMERICA**
**DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY**
**No. 3:98-CR-107-CRS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - )
)
UNITED STATES OF AMERICA,                    )
)
                                             )    **MOTION TO**
        v.                                   )    **REDUCE SENTENCE PURSUANT TO**
                                             )    **18 U.S.C. § 3582(c)(1)(A)(i)**
                                             )
                                             )
RONALD THOMAS BOLDEN                          )
                                             )
                                             )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

KAPLAN JOHNSON ABATE & BIRD LLP
Michael Leigh
710 West Main Street
4th Floor
Louisville, KY 40202
Email: mleigh@kaplanjohnsonlaw.com
Phone: (502) 434-4243
Fax: (502) 540-8282
KY Bar No. 96494
Local Criminal Rule 57.2 Counsel for
Defendant Ronald Thomas Bolden

DEBEVOISE & PLIMPTON LLP
John Gleeson
Marisa R. Taney
William C. Mattessich
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Email: jgleeson@debevoise.com
Email: mrtaney@debevoise.com
Email: wcmattessich@debevoise.com
NY Bar No.1820992
NY Bar No. 5205992
NY Bar No. 5532551
Attorneys for Defendant Ronald T.
Bolden

# TABLE OF CONTENTS

STATEMENT OF THE CASE ..................................................................................... 1

STATEMENT OF THE RELEVANT FACTS ........................................................... 2

ARGUMENT ............................................................................................................. 3

A.    The Court Has the Authority to Reduce Bolden's Sentence for "Extraordinary and Compelling Reasons." ........................................................................................ 3

     1.    Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances. .......................................... 4

     2.    "Extraordinary and Compelling Reasons" That Warrant Sentence Reductions are not Limited to Medical, Age-Related, or Family Circumstances. ....................................................................................... 6

B.    Extraordinary and Compelling Circumstances Warrant a Reduction in Bolden's Sentence. ........................................................................................................... 11

C.    Bolden Is Not a Danger ..................................................................................... 16

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

CASES

*Alleyne v. United States*, 570 U.S. 99 (2013)................................................................. 13

*Dean v. United States*, 137 S. Ct. 1170 (2017) ............................................................... 13

*Dorsey v. United States*, 567 U.S. 260 (2012) ................................................................. 8

*McCoy v. United States*, No 2:03-cr-197, 2020 WL 2738225
   (E.D. Va. May 26, 2020)................................................................................................ 15

*United States v. Baker*, No. 10-20513, 2020 WL 4696594
   (E.D. Mich. Aug. 13, 2020) ............................................................................... 9, 11, 12

*United States v. Beck,* 425 F. Supp. 3d 573 (M.D.N.C. 2019) ...................................... 7

*United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712
   (2d Cir. Sept. 25, 2020)......................................................................... 2, 7, 8, 11

*United States v. Cantu*, 423 F. Supp. 3d 345 (S. D. Tex. 2019) ......................... 7, 10, 11

*United States v. Cantu-Rivera*, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ....................... 9, 14

*United States v. Chan*, No. 96-CR-00094-JSW-13 2020 WL 1527895
   (N.D. Cal. Mar. 31, 2020) ........................................................................................ 11

*United States v. Ellerby*, No. 95-CR-00077-CBA, Dkt. 172
   (E.D.N.Y. Apr. 29, 2020)........................................................................................... 11

*United States v. Haynes*, 93 CR 1043 (RJD), 2020 WL 1941478
   (E.D.N.Y. Apr. 22, 2020)................................................................................... 10, 11

*United States v. Jones*, No. 94-CR-20079-EJD-1, 2020 WL 5359636
   (N.D. Cal. Aug. 27, 2020)............................................................................................ 9

*United States v. Keith Lamar Lott*, Case No. 95cr72, 2020 WL 3058093
   (S.D. Cal. June 8, 2020)............................................................................................. 10

*United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911
   (W.D.N.Y. Apr. 20, 2020) ................................................................... 10, 11, 14, 17

*United States v. Maumau*, Case No. 2:08-cr-00758-TC-11, 2020 WL 806121
   (C.D. Utah Feb. 18, 2020)....................................................................... 9, 11, 12

*United States v. McGraw*, No. 2:02-cr-00018 LJM CMM, 2019 WL 2059488
   (S.D. Ind. May 9, 2019) ............................................................................................... 9

ii

*United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058
(S.D.N.Y. Apr. 6, 2020)..................................................................... 14

*United States v. Quinn*, Case No. 91-cr-00608-DLJ-1 (RS), 2020 WL 3275736
(N.D. Cal. June 17, 2020) ............................................................... 10

*United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020) ................................... 7, 12

*United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904
(N.D. Iowa Jan. 8, 2020) ............................................................... 10

*United States v. Urkevich*, No. 8:03-CR-37, 2019 WL 6037391
(D. Neb. Nov. 14, 2019) ............................................................... 11

*United States v. Valdez*, No. 3:98-cr-0133–01-HRH, 2019 WL 7373023
(D. Alaska Dec. 31, 2019) ............................................................. 10

*United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815
(M.D. Tenn. Mar. 4, 2020).......................................................... 10, 12

## STATUTES

18 U.S.C. § 3553(a) ........................................................................... 8, 16

18 U.S.C. § 3582(c) ......................................................................... passim

28 U.S.C. § 994............................................................................... 6

Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, 98 Stat 1837 ..................... 3, 4

First Step Act of 2018, Pub.L. No. 115-391, 132 Stat. 5194.................................. passim

## OTHER AUTHORITIES

H.R. Rep. No. 115-699 (2018)............................................................... 17

Human Rights Watch, *The Answer is No: Too Little Compassionate Release in US Federal Prisons*, 2 (Nov. 2012) https://www.hrw.org/report/2012/11/30/answer-no/too-little-compassionate-release-us-federal-prisons# ............................................................... 5

James C. Howell et al., Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf.................................... 15

MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* Law and Neuro (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf. ...................................................... 15

S. Rep. No. 98-225 (1983) ............................................................... 4, 5

**REGULATIONS**

Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for
    Implementation of 18 U.S.C. §§ 3582 and 4205(g),
    OGC/LCI No. 5050.50 (January 17, 2019) .................................................................................. 6

U.S. Sentencing Guidelines Manual (2020) .............................................................................. 6, 7

iv

Ronald Thomas Bolden respectfully moves this Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Bolden also requests oral argument on this motion.

## STATEMENT OF THE CASE

In 2000, Bolden participated in three robberies during a six-week period. He was only 18 years old, had an IQ of 69, and had been struggling with alcohol, marijuana, and cocaine addiction since dropping out of the ninth grade four years earlier. Though no one was physically injured during the robberies[1] and relatively small amounts were stolen, Judge Edward Johnstone was compelled to impose a sentence of 31-and-a-half years in prison. Twenty-five years of that sentence were mandated by two charges brought under 18 U.S.C § 924(c), a "stacking" phenomenon that was so excessively harsh and so unintended by the Congress that enacted § 924(c) that, in 2018, Congress got rid of it in all future cases like Bolden's.

Judge Johnstone openly lamented his lack of discretion when he imposed the lengthy sentence on Bolden. "[O]ne hope you may have," he told Bolden at the time, "is that Congress wakes up and sees that young people can be foolish, and get over their foolishness in a hurry. Under these circumstances, that will probably be the best channel for your relief. There's no discretion in the judge's hands."

Thanks to the First Step Act, there is now discretion in this Court's hands. Bolden is currently 41 years old. As Judge Johnstone predicted, he got over his foolishness and the substance abuse problems of his teens long ago. He has served more than 22 years already—the equivalent (considering good time) of a sentence greater than 26 years. The Court is now empowered to bring a belated measure of justice to Bolden's sentence, as federal courts

---

[1] Bolden was shot in the neck fleeing from the last robbery.

1

across the country, including the only court of appeals to decide the issues central to this motion, have held.[2] Many of those courts have granted relief in the form of a sentence reduction to time served on facts very similar to those in this case. Bolden asks this Court to do the same for the reasons discussed below.

## STATEMENT OF THE RELEVANT FACTS

Between May and July of 1998, when Bolden was just 18 years old, he was involved in robberies of three Louisville banks. No one was physically injured during any of the three robberies, but Bolden was shot in the neck by an armed passerby after the third one. He was arrested later that same day.

Bolden was charged with conspiring to rob banks (Count One), with three substantive bank robbery charges (Counts Two, Four, and Six), and with three § 924(c) counts (Counts Three, Five, and Seven). He entered pleas of guilty twice. In April of 1999, with no plea agreement, he pled guilty to Counts One, Two, and Three. Three months later, pursuant to a plea agreement calling for the dismissal of one of the two remaining § 924(c) counts (Count Five), he pled guilty to the remaining counts (Four, Six, and Seven). In other words, to avoid the prospect of 45 years of mandatory consecutive time on three § 924(c) charges, Bolden agreed to subject himself to 25 years of mandatory consecutive time on two such counts.

On January 24, 2000, Bolden was sentenced to 31 years and six months in prison: 25 years on the two § 924(c) counts, to run consecutively the 78-month term imposed on the other counts.[3] On August 5, 2020, Bolden's counsel requested that Warden Francisco J. Quintana at

---

[2] *See United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712 (2d Cir. Sept. 25, 2020)

[3] Bolden was sentenced to 60 months on the conspiracy charge and 78-month terms on each of the three back robbery counts, all to run concurrently. Because Bolden was sentenced before *US v. Booker*, 543 U.S. 220 (2005), this 78-month sentence was the lowest possible sentence the judge could impose under the guidelines. As Judge Johnstone stated at sentencing

FMC Lexington move this Court for a reduction of Bolden's sentence under 18 U.S.C.

§ 3582(c)(1)(A)(i).[4] Thirty days have elapsed since that request, and the Warden has not

responded.

**ARGUMENT**

This Court has the clear authority to reduce Bolden's sentence based on the extraordinary

and compelling circumstances presented by his case. The changes to 18 U.S.C. § 3582(C)(1)(A)

made by the First Step Act have allowed inmates serving unusually long sentences to seek

sentence reductions from their sentencing courts, even without the imprimatur of the BOP. The

circumstances here warrant such relief, and the factors a court must consider in determining an

appropriate sentence weigh strongly in favor of a reduction in sentence to time served.

## A. The Court Has the Authority to Reduce Bolden's Sentence for "Extraordinary and Compelling Reasons."

What has become known as the compassionate release statute was first enacted as part of

the Comprehensive Crime Control Act of 1984. Pub. L. No. 98–473, 98 Stat 1837. It provided

that a district court could reduce a term of imprisonment in certain situations, one of which is the

presence of "extraordinary and compelling reasons" warranting the reduction, as determined by

the sentencing court. *See* 18 U.S.C. 3582(c)(1)(A)(i) (2002), amended by First Step Act of 2018,

Pub. L. No. 115-391 § 603, 132 Stat. 5194. Although the courts were given the authority to

reduce sentences, the statute imposed a gatekeeper—that authority could be exercised only upon

a motion by the Director of the BOP. *Id.* at § 3582(c)(1)(A). Without such a motion, sentencing

---

"you're looking at a judge who is operating under a system [where] . . . the discretion to
reduce below the guidelines is taken away from a judge."

[4] A prior *pro se* request for such a motion was made on January 14, 2020, and was denied on
January 28, 2020.

3

courts were powerless to reduce a prisoner's sentence, even if they concluded that extraordinary and compelling reasons warranted a reduction.

This regime changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* First Step Act § 603. Under the amended statute, a court can now reduce a sentence for extraordinary and compelling reasons upon motion of a defendant as well, provided he has fully exhausted all administrative remedies to appeal a BOP refusal to bring a motion, "or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Bolden submitted his request to the Warden on August 5, 2020; 30 days have elapsed since then, entitling him to bring his motion directly to the Court.

> 1. *Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances.*

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a sentence reduction under § 3582(c)(1)(A)(i). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to determine on a case-by-case basis when such reasons exist, and to reduce fundamentally unfair sentences where they do.

The goal of the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n. 196 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which

4

> the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment.

*Id*. at 55–56 (emphasis added). Put differently, rather than having the Parole Commission conduct an opaque review of every federal sentence, Congress decided to let sentencing courts decide, transparently and in a far narrower band of cases—that is, those presenting extraordinary and compelling reasons—whether "there is justification for reducing a term of imprisonment." *Id*. at 56.

The circumstances listed in § 3582(c)(1)(A) were thus intended to serve as "safety valves for modification of sentences," authorizing reductions where justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a parole board, and to permit "later review of sentences in particularly *compelling situations*." *Id.* (emphasis added). Although, as discussed below, Congress charged the Sentencing Commission to supply criteria to be considered, it chose not to restrict what can constitute "extraordinary and compelling reasons." The mandate was simple: courts would exercise their discretion in particular cases to determine whether such reasons "justify a reduction of an unusually long sentence." *Id.* at 55. This judicial check on the exercise of prosecutorial discretion was critical as we moved from the old indeterminate regime to a determinate one, in which prosecutors are armed with the power to invoke an array of mandatory sentencing provisions, many of them quite onerous.

Unfortunately, the statute established the BOP as a gatekeeper, which effectively eliminated the safety valve. It hardly ever opened the gate, [5] and *never* did so for reasons other

---

[5] See, e.g., Human Rights Watch, *The Answer is No: Too Little Compassionate Release in US Federal Prisons*, 2 (Nov. 2012), https://www.hrw.org/report/2012/11/30/answer-no/too-little-

than medical condition, advanced age, or dire family circumstances.[6] To address this defect, and for the express purpose of increasing the use of the power to reduce sentences, Congress, through amendment effected by First Step Act § 603(b), now allows direct access to the sentencing court even in the absence of a BOP motion, and indeed even where the BOP has affirmatively rejected a defendant's request that such a motion be made.

2. *"Extraordinary and Compelling Reasons" That Warrant Sentence Reductions are not Limited to Medical, Age-Related, or Family Circumstances.*

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). The resulting policy statement provides that extraordinary and compelling reasons warranting a sentence reduction can exist in any of the following four circumstances : (A) medical condition; (B) advanced age; (C) dire family circumstances; and (D) "Other Reasons," which specifically include "an extraordinary and compelling reason *other than*, or in combination with," the three specified circumstances. U.S.

---

compassionate-release-us-federal-prisons# (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

[6] BOP's own Program Statement restricts the grounds for its motions to those three grounds. Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), OGC/LCI No. 5050.50 (January 17, 2019) ("BOP Program Statement"). Indeed, its denial of Bolden's *pro se* request early this year listed only terminal illness, a permanent physical or mental condition, impairment due to old age, and dire family circumstances as potential extraordinary and compelling reasons justifying sentence reductions. Ex. I, Warden's Response to *Pro Se* Request for Compassionate Release.

Sentencing Guidelines Manual § 1B1.13, Application Note 1(A)-(D) (2020).[7] Thus, the

Commission has decided that extraordinary and compelling reasons for a sentence reduction may

exist even where an inmate is not elderly, ill, or facing dire, caregiver-related family

circumstances.

      As a preliminary matter, several courts, including the Second Circuit, have held that

§ 1B1.13 does not apply at all where, as here, the sentence reduction motion is brought by a

defendant rather than the BOP. *See United States v. Brooker*, No.19-3218, ECF No. 64-1 (2d Cir.

Sept. 25, 2020) (holding that the language in § 1B1.13 is "clearly outdated" after the First Step

Act, that § 1B1.13 applies "only to those motions that the BOP has made," and that "[n]either

Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13,

limits the district court's discretion.").[8]

---

[7] The commentary states that the extraordinary and compelling reasons "need *not* have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2 (emphasis added). Even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction[.]" *Id*. The BOP Program Statement inexplicably states the opposite, no doubt accounting in part for the BOP's abysmal record of making compassionate release motions when it was the gatekeeper. BOP Program Statement, at 1 ("The Bureau uses 18 U.S.C. 4205(g) and 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.").

[8] *See also United States v. Redd*, 444 F. Supp. 3d 717, 724 (E.D. Va. 2020) (concluding "that there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement'"); *United States v. Beck,* 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (finding "no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act" because "the old policy statement applies to motions for compassionate release filed by the BOP Director and makes no mention of motions filed by defendants"); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S. D. Tex. 2019) ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582.").

In any event, even if § 1B1.13 is the "applicable policy statement" with which a sentence reduction sought by Bolden himself (as opposed to the BOP) must be consistent, the law requires that all references to BOP control over such motions be disregarded. As the Supreme Court has observed, statutes "trump Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266 (2012). *Dorsey* requires district judges to consider the language, structure, and basic objectives of a sentencing statute, and in this case Congress amended § 3582(c)(1)(A) for the explicit purpose of increasing the use of sentence reductions by removing BOP as an impediment. If § 1B1.13 is indeed an applicable policy statement when the defendant himself is the movant, all of its references to BOP have been trumped by the First Step Act.

Indeed, Congress contemplated exactly this situation in§ 3553(a)(5), which states that a court considering a sentence reduction motion shall consider applicable guidelines and policy statements "subject to any amendments made to such policy statement by act of Congress (*regardless of whether such amendments have yet to be incorporated by the Sentencing Commission*. . ..)." 18 U.S.C. § 3553(a)(5) (emphasis added). Here, an act of Congress removed BOP from its role as gatekeeper under § 3582(c)(1)(A) for the purpose of alleviating over-incarceration by increasing the use of sentence reductions. As the Second Circuit wrote in *Brooker*, Congress's "clear intention" in passing the First Step Act was to remove the BOP from its role in the compassionate release process after years of its failure to adequately perform that function. *Brooker*, 2020 WL 5739712, at *7 ("After watching decades of the BOP Director's failure to bring any significant number of compassionate release motions before the courts, Congress allowed people seeking compassionate release to avoid BOP . . ."). Thus, even

assuming § 1B1.13 is the "applicable policy statement," the Court must consider its terms subject to that statutory demotion of the BOP.[9]

The reference to the BOP in Application Note (1)(D), like the other references to BOP in the policy statement itself and the commentary, are thus relics of the old regime. Congress has finally removed the BOP's blessing as a prerequisite to relief under § 3582(c)(1)(A), divesting it of its previous responsibility to determine whether extraordinary and compelling reasons warrant a sentence reduction in a particular case. As a large and growing number of district courts have observed , §1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-cr-00018 LJM CMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *United States v. Cantu-Rivera*, 2019 WL 2578272 at *2 n.1 (S.D. Tex. June 24, 2019) .[10]

---

[9] The Sentencing Commission itself has observed that § 1B1.13 will require amendment (once a quorum exists) to reflect the removal of the BOP as the gatekeeper for such motions. *See* U.S. Sentencing Comm'n, Summary Statement of Account Requirements 10.7 (2020), https://www.uscourts.gov/sites/default/files/united_states_sentencing_commission_0.pdf ("[F]ull implementation of the [First Step] Act requires [that] . . . a newly constituted Commission . . . amend the *United States Sentencing Commission Guidelines Manual* at §1B1.13 to reflect the new authority for a defendant to file a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).").

[10] *See also United States v. Maumau*, Case No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *4 (C.D. Utah Feb. 18, 2020) (joining "the majority of other district courts" that have concluded that courts have "discretion to provide" relief sought and to determine whether there is an "extraordinary and compelling reason" to reduce a sentence, based on changes to the First Step Act); *United States v. Jones*, No. 94-CR-20079-EJD-1, 2020 WL 5359636, *4 (N.D. Cal. Aug. 27, 2020) ("[T]he listing of examples of extraordinary and compelling reasons in the Policy Statements § 1B1.13 and Application notes is not, by its language exclusive.' . . . The Application Notes state that 'extraordinary and compelling reasons exist under any of the circumstances set forth below'; they do not state that extraordinary and compelling reasons exist only under the circumstances described."); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *2-3 (E.D. Mich. Aug. 13, 2020) (agreeing with the "majority

Finally, the Court's authority to reduce Bolden's sentence is not only consistent with the amended statute, but also with the commentary's statement that "[t]he *court* is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." U.S.S.G. § 1B1.13, Application Note 4 (emphasis added). Thus, as explained in *Cantu*:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]—is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.

position" among district courts that "although the outdated [Sentencing Commission's] policy statement provides helpful guidance, it does not 'constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction"); *Cantu*, 423 F.Supp.3d at 351 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3582."); *United States v. Valdez*, No. 3:98-cr-0133–01-HRH, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to look to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)."); *United States v. Haynes*, 93 CR 1043 (RJD), 2020 WL 1941478, at *13 (E.D.N.Y. Apr. 22, 2020) ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute"); *United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *6-7 (W.D.N.Y. Apr. 20, 2020), *appeal filed by United States v. Brown (Marks)*, (2d Cir. Apr. 23, 2020); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Owens*, 97-CR-2546-CAB (S.D. Cal. Mar. 20, 2020); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (determining that courts "have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary and compelling reasons"); *United States v. Quinn*, Case No. 91-cr-00608-DLJ-1 (RS), 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) (joining "numerous other courts" and held that the First Step Act empowered district courts to consider "enormous sentencing disparit[ies] created by subsequent changes to federal sentencing law" as an "extraordinary and compelling reason" for compassionate release); *United States v. Keith Lamar Lott*, Case No. 95cr72, 2020 WL 3058093, at *3 (S.D. Cal. June 8, 2020) (holding that the "gross disparity between the sentence that a defendant received before the First Step Act and the sentence a defendant would have received after the First Step Act" is a "relevant factor in determining whether extraordinary and compelling reasons may exist to reduce a defendant's sentence").

*Cantu*, 423 F. Supp. 3d at 352; *see also United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *13 (E.D.N.Y. Apr. 22, 2020) (same); *United States v. Urkevich*, No. 8:03-CR-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) ("this Court may use Application Note 1(D) as a basis for finding extraordinary and compelling reasons to reduce a sentence" beyond those listed in (A) through (C)).

## B. Extraordinary and Compelling Circumstances Warrant a Reduction in Bolden's Sentence.

The various cases endorsing sentence reductions in cases similar to this one reveal some of factors judges have found relevant in reducing sentences.[11] As set forth below, these and other factors establish extraordinary and compelling reasons that warrant a reduction of Bolden's sentence.

First, if Bolden were sentenced today, he would face a mandatory sentence of only ten years, *fifteen years shorter* than the one he faced before Judge Johnstone. As numerous courts

---

[11] The Second Circuit in *Brooker* highlighted considerations that district courts, applying the "discretion that the First Step Act gives to [them]," may appropriately weigh in favor of a sentence reduction, including a sentencing court's perception of the "injustice of [a defendant's] lengthy sentence," a defendant's extensive rehabilitation, a defendant's age at the time of the offense, and the coronavirus pandemic. *Brooker*, 2020 WL 5739712, at *8 (quoting *Maumau*, 2020 WL 806121, at *6–7). *See also United States v. O'Bryan*, NO. 96-CR-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (the defendant's rehabilitation and conduct in prison); *United States v. Chan*, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020) ("rehabilitation efforts in combination with the amendments to Section 924(c)'s stacking provisions"); *Marks*, 2020 WL 1908911, at *7 ("the combination of changes to the 'stacking' provisions of § 924(c), coupled with the defendant's rehabilitation"); *United States v. Ellerby*, No. 95-CR-00077-CBA, Dkt. 172, at *7 (E.D.N.Y. Apr. 29, 2020) ("the combination of [the defendant's] long sentence under the now-repealed § 924(c) stacking regime and his commitment to rehabilitation while incarcerated, together with an analysis of the factors under 18 U.S.C. § 3553(a)"); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *6 (E.D. Mich. Aug. 13, 2020) (defendants' youth at the time of the offense, the sentencing disparities between those sentenced before and after the First Step Act, and the defendant's rehabilitative efforts); *Haynes*, 2020 WL 1941478, at *15 (the "sea change in § 924(c) law, coupled with the brutal impact of the original sentence").

have held, the fact that Congress chose not to make the amendment to § 924(c) retroactive does

not preclude consideration of that disparity (among other factors) in determining whether

extraordinary and compelling reasons warrant a reduction. *See, e.g.*, *Maumau*, 2020 WL 806121,

at *7 (finding extraordinary and compelling reasons existed based primarily on "the incredible

length of the mandatory sentence imposed, and the fact that, if sentenced today, [the defendant]

would not be subject to such a long term of imprisonment.").[12]

Second, whereas Judge Johnstone felt compelled by the mandatory Guidelines to also

impose 78 months on the underlying conspiracy and robbery charges, the Supreme Court has

since made it clear that judges may properly impose a single day in prison on such counts when

---

[12] *See also, e.g., Baker*, 2020 WL 4696594, at *3 (finding the fact that defendant was 24 at the time of sentencing, his record of rehabilitation, his 57-year sentence, and the disparity between his sentence and those sentenced for similar crimes after the First Step Act all to be an extraordinary and compelling basis for relief); *United States v. Pollard*, No. CR 10-633-1, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020) (finding the "dramatic difference in the sentence Pollard would face if charged today," along with his rehabilitation and lack of a prior criminal history established extraordinary and compelling circumstances); *United States v. O'Bryan*, No. 96-CR-10076-03-JTM, 2020 WL 869475, at *1-2 (D. Kan. Feb. 21, 2020) (finding extraordinary and compelling reasons existed, in part, based on the fact that the defendant would be facing 10 years imprisonment rather than 25 if convicted of the same conduct following the passage of the First Step Act); *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) (finding the defendant's case presented extraordinary and compelling reasons because of the disparity between the sentence he received and the sentence he would have received after the First Step Act, a "disparity [that] is primarily the result of Congress' conclusion that sentences like Mr. Redd's are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted, as well as a legislative declaration of what level of punishment is adequate."); *United States v. Decator*, No. CCB-950202, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (agreeing with the "[m]ultiple district courts [that] have reasoned that 'the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)'"); *Young*, 2020 WL 1047815, at *8 (finding "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), at least when considered in conjunction with" other reasons warranting relief).

consecutive § 924(c) sentences are mandated. *See Dean v. United States*, 137 S. Ct. 1170, 1178 (2017). Thus, *even if* Bolden had faced *all three* of his § 924(c) counts (which he did not), and *even if* there were jury findings of brandishing with respect to each count (which there were not),[13] under current law the Court could impose a sentence of 21 years and one day, a sentence that (considering good time) Bolden completed serving more than four years ago.

Third, the since-abolished sentence enhancement at issue here represents one of the most shameful chapters in the determinate regime ushered in by the Sentencing Reform Act of 1984. For so many years, the Sentencing Commission has rung alarm bells that § 924(c) stacking was used disproportionately *for decades* against young black men like Bolden.[14] The sentence

---

[13] Since Mr. Bolden's sentencing, the Supreme Court ruled that the question of whether a defendant had brandished, as opposed to merely having carried, a firearm in violation of § 924(c) must be found by a jury beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 100 (2013) ([B]ecause the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received if a different range had been applicable.").

[14] In its 2004 report entitled *Fifteen Years of Guidelines Sentencing*, the Commission wrote that Black defendants had been disproportionately subjected to § 924(c) "stacking" for decades, accounting for 48% of offenders who qualified for a charge under § 924(c), but representing 56% of those actually charged and 64% of those convicted. The Commission recognized that these racial differences create an impression of "unfairness and unwarranted disparity" that is difficult to refute. The report can be found at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf.

In its October 2011 Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, at page 363, the Sentencing Commission observed that § 924(c) stacking continued to be applied disproportionately to Black offenders. It recommended that Congress (1) lower the mandatory sentences in § 924(c); (2) make the enhanced sentences for second or subsequent convictions applicable only when the first § 924(c) conviction occurred in a prior case; and (3) allow for concurrent sentences on "stacked" counts. These amendments are necessary, the Commission stated, to remedy the "excessively severe and disproportionate" sentences in the cases. *Id.* at 359. The report can be found here: //www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system.

reductions now authorized by the amendment to § 3582(c)(1)(A) could never undo the injustice caused by this sordid history, but they can blunt it in individual cases like this one.

Fourth, Bolden's rehabilitation over more than 22 years in prison has been nothing short of remarkable. Prior to his offense, he was a high school dropout with IQ of 69 abusing multiple substances. He has now completed over 40 educational courses and obtained his G.E.D. Ex. A, NBOP Education Transcript. His classes included training on job readiness, vocational skills, personal wellness, and carpentry. Ex. A, NBOP Educational Transcript. He obtained Associates' Degrees in Applied Sciences and Construction Carpentry from Somerset Community College. Ex. B, Ministry License and Certificates from Somerset Community College. He also obtained credits towards his bachelor's degree. He became ordained as a minister on March 25, 2009, and licensed on May 1, 2009. Ex. C, Ordination by Ordinance; Ex. B, Certificate of Ministry License. Bolden uses his skills as a minister to facilitate bible study classes and prayer groups at FMC Lexington, and he has become a source of support and spiritual guidance for other inmates. *See* Ex. D, Letter from Chato Patterson; Ex. E, Letter from Hiroki Shimizu; Ex. F, Letter from Nicholas Stradley. These accomplishments weigh heavily in support of granting relief.[15]

---

Finally, in 2018, just nine months before the enactment of the First Step Act, the Sentencing Commission reported yet again that Black men not only remained overrepresented in the § 924(c) caseload generally (at 52.6%), but represented an astonishing 70.5 % of defendants who received "stacked" sentences under the statute. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180315_Firearms-Mand-Min.pdf at page 24**.**

[15] *See Cantu-Rivera*, 2019 WL 2578272, at *2 (recognizing the "extraordinary degree of rehabilitation Mr. Cantu-Rivera [] accomplished" as a factor justifying the reduction in his sentence); *Marks*, 2020 WL 1908911, at *13 (recognizing the "ample evidence that Marks has made a positive turnaround in his life," including his completion of numerous educational courses and programs, positive work reports, and the positive impact he had on other inmates, as supporting a finding of extraordinary and compelling reasons); *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence reduction under § 3582(c) to a defendant who ran a drug trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive

Fifth, Bolden urges the Court to place great weight on the fact that he was only 18 years old when he committed his offenses. In the time since his case was resolved, we have learned so much more about the significance of that fact. He was legally an adult, but developmentally he was still a boy, fundamentally different from older offenders. Neuroscience researchers have established that the brain—including the regions responsible for self-control and judgment— continue to develop into a person's mid to late twenties.[16] As the MacArthur Foundation Research Network on Law and Neuroscience publication entitled "*How Should Justice Policy Treat Young Offenders*?" makes clear, delinquency in adolescents is "usually not an indication of an indelible personality trait."[17] There is every reason to believe Bolden has already aged out of violent crime. *See id.*[18] In short, the Court should conclude that Bolden's extreme youth at the time of his crimes is also an extraordinary and compelling circumstance warranting a sentence reduction. *See McCoy v. United States*, No 2:03-cr-197, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020) (finding that teenage defendant's "relative youth at the time of sentence" is "extraordinary and compelling basis for relief").

Sixth, Bolden has a strong family support system, and will have a place to live if granted relief. *See*; Ex. G, Letter from Ronnie Franklin; Ex. H, Letter from Fess Matthews. He has stayed

---

outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

[16] James C. Howell et al., *Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* 17 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf (noting that "adolescents and young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses").

[17] MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* Law and Neuro (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf.

[18] Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019) ("For most crimes, the likelihood that someone will continue committing them once they hit 40 is negligible. Most juveniles discontinue their criminal activity after brief experimentation with it.").

in close contact with his father (Ronnie Franklin), his mother (Wilma Bolden), his stepfather (Fess Matthews), and family friend Margie Bailey. His friends and family members have promised to do everything in their power to help him secure full-time employment upon his release, and he has already made headway in identifying some opportunities. Bolden has also identified several local religious organizations that would allow him to use his skills in ministry and construction carpentry. If released, Bolden is committed to working in and contributing to his community and helping to support his family.

Finally, Bolden's conduct while in prison has been exemplary. He has been an ideal inmate, with no disciplinary infractions. In the holistic review the Court is now entitled to undertake, Bolden's good behavior is an important indication that spending more than half of his life in prison on this case has matured him. He is ready to be released, and he respectfully submits that he has earned the confidence of the Court that the additional four-plus years remaining on his sentence amount to greater punishment than is necessary to serve the legitimate goals of sentencing set forth in § 3553(a)(2).

### C. Bolden Is Not a Danger.

No reasonable person could conclude that Bolden poses a danger to the community. He recognizes that the actions he took 22 years ago were painful and damaging to the victims of his crimes. He is well-liked by other inmates and guards, both of whom call him "Brother B." *See* Ex. E, Letter from Hiroki Shimizu. He organizes collections of clothing and hygiene items for new arrivals at FMC Lexington and provides spiritual and emotional support. *See* Ex. F, Letter from Nicholas Stradley. Even when Mr. Bolden was mistakenly told earlier this year that he would be released—a mistake that was heart-wrenching for him and his family—he was gracious and continued to treat other inmates and guards with respect. Ex. H, Letter from Hiroki

Shimizu. This Court can trust him to provide counseling and support to, rather than endanger, his community once he is permitted to return to it.

## CONCLUSION

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *See* H.R. Rep. No. 115-699, at 22 (2018) (Through the First Step Act Congress sought to implement "corrections policy reforms designed to enhance public safety by improving the effectiveness and efficiency of the federal prison system in order to control corrections spending, manage the prison population, and reduce recidivism.").

Ronald Bolden is a model of rehabilitation. He has spent his time in prison well, improving himself dramatically and turning his life around. He has demonstrated an unwavering commitment to becoming a productive member of his community if released. He has become part of a community of faith, in which he will continue to participate if released. His loving family and friends stand ready to support him as he rebuilds his life.

The legislative action Judge Johnstone hoped for when he reluctantly sentenced Bolden so severely has arrived. As Judge David Larimer in the Western District of New York wrote in early 2019, one option now for judges and prosecutors to say to prisoners like Bolden "'too bad, the [First Step Act] changes don't apply to you and you must serve the lengthy remainder of your 40-year term, and perhaps die in jail.'" *United States v. Marks*, 6:03-CR-06033-DGL, Dkt. 43 (W.D.N.Y. Mar. 14, 2019). But Judge Larimer recognized and chose a much better option; he joined the growing number of district courts around the country by granting a motion just like this one, reducing Marks's 40-year sentence to 20 years. *Marks*, 2020 WL 1908911, at *17. Marks is now at home.

17

Bolden respectfully urges the Court to do the same, and use the opportunity conferred by the First Step Act to reduce his sentence to time served. Doing so would rectify an unjust sentence and offer a second chance to a man who has turned his life around.

Respectfully Submitted,

/s/ Michael Leigh
Michael Leigh
KAPLAN JOHNSON
  ABATE & BIRD LLP
Michael Leigh
710 West Main Street
4th Floor
Louisville, KY 40202
Email: mleigh@kaplanjohnsonlaw.com
Phone: (502) 434-4243
Fax: (502) 540-8282
KY Bar No. 96494
Local Criminal Rule 57.2 Counsel for
Defendant Ronald Thomas Bolden

/s/ John Gleeson
John Gleeson*
Marisa R. Taney*
William C. Mattessich*
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
Email: jgleeson@debevoise.com
Email: mrtaney@debevoise.com
Email: wcmattessich@debevoise.com
NY Bar No.1820992
NY Bar No. 5205992
NY Bar No. 5776430
Attorneys for Defendant Ronald T. Bolden

*applications for admission pro hac vice to
follow

18

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing **MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** was electronically filed with the Clerk of the Court using CM/ECF which will send notification to all registered parties.

Dated: October 27, 2020

/s/ Michael Leigh
Michael Leigh
KAPLAN JOHNSON
  ABATE & BIRD LLP
Michael Leigh
710 West Main Street
4th Floor
Louisville, KY 40202
Email: mleigh@kaplanjohnsonlaw.com
Phone: (502) 434-4243
Fax: (502) 540-8282
KY Bar No. 96494
Local Criminal Rule 57.2 Counsel for
Defendant Ronald Thomas Bolden