# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.                                    CRIMINAL ACTION NO. 3:98-CR-107-CRS

RONALD BOLDEN                                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on the motion of the Defendant, Ronald Bolden ("Bolden"),

by counsel, for a reduction of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due

to "extraordinary and compelling reasons." DN 188 at 6. On January 14, 2020, Bolden submitted

a *pro se* request asking the Bureau of Prisons ("BOP") to file a motion for compassionate release.

DN 191 at 5. Francisco J. Quintana, the warden at the Federal Medical Center ("FMC") Lexington,

denied that request. DN 188-9 at 2, 191 at 5. Bolden appealed this denial through the BOP

administrative appeal process but did not file a motion for compassionate release following

administrative review. DN 191 at 5. Instead, on August 4, 2020, Bolden's counsel requested that

Warden Quintana file a motion for compassionate release on Bolden's behalf. DN 188 at 7-8, 191

at 5. The record does not indicate that Warden Quintana responded to this request. DN 188 at 8,

191 at 5-6. Bolden, by counsel, then filed the instant motion for compassionate release. DN 188.

The United States responded and objected to the motion on the merits. DN 191. Bolden then filed

a reply. DN 192.

The Court subsequently ordered the United States Probation Office for the Western District

of Kentucky ("Probation") to assist the Court in reviewing the motion by conducting a preliminary

investigation of Bolden's release plan. DN 207. Probation filed a sealed Compassionate Release Memorandum documenting its findings. DN 208. The matter is now ripe for review.

## I. BACKGROUND

During a three-month span in 1998, Bolden, who was eighteen at the time, and two co-defendants committed several armed bank robberies in the Louisville, Kentucky area. DN 124 at 7-9. Bolden was later arrested and charged with one count of conspiracy to commit armed robbery (Count 1), three counts of armed bank robbery (Counts 2, 4, and 6), and three counts of violating 18 U.S.C. § 924(c) for using a firearm during each of the robberies (Counts 3, 5, and 7). DN 123 at 1, 124 at 5-6. Bolden pleaded guilty, without the benefit of a plea agreement, to one count of conspiracy to commit armed bank robbery, one count of armed bank robbery, and one count of violating § 924(c). DN 123 at 1, 124 at 6. Later, pursuant to a plea agreement, Bolden pleaded guilty to two counts of armed bank robbery and to one of the § 924(c) charges.[1] DN 123 at 1, 124 at 6.

In January 2000, Judge Edward Johnstone sentenced Bolden to 60 months imprisonment for the conspiracy charge (Count 1) and 78 months on the substantive bank robberies charges (Counts 2, 4, and 6), both of which would run currently for a term of 78 months. DN 123 at 2. Bolden also received a sentence of 60 months imprisonment on one of the § 924(c) charges (Count 3), which would run consecutive to the 78 month aggregate term for the other sentences imposed, plus 240 months on the other § 924(c) charge (Count 7), which would run consecutive to both the 78-month term and the 60-month term, for a total of 378 months imprisonment. DN 123 at 2.

---

[1] Bolden's other § 924(c) charge, which was Count 5 of the indictment, was dismissed at sentencing upon a motion of the United States. DN 123 at 1.

2

Bolden appealed his sentence, but the Sixth Circuit affirmed. *United States v. Bolden*, 15 F. App'x 313 (6th Cir. 2001).

Bolden then moved to vacate his sentence pursuant to 28 U.S.C. § 2255. DN 150, 151. This Court denied that motion in May 2003. DN 155. Bolden subsequently sought authorization from the Sixth Circuit for this Court to consider a second or successive motion to vacate, but the Sixth Circuit denied Bolden's request. DN 163.

In 2017, Bolden moved to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and Federal Rule of Civil Procedure 60(b). DN 174. This Court denied his motion considering that, among other things, "Bolden, and not the Director of the Bureau of Prisons," moved for relief. DN 181 at 3.

Based upon significant changes in the law, Bolden again seeks compassionate release. DN 188.

## II. <u>ANALYSIS</u>

Before granting a motion for compassionate release, a district court must engage in a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, a court "must find that 'extraordinary and compelling reasons warrant such a reduction.'" *Id*. (citing 18 U.S.C. § 3582(c)(1)(A)). Second, a court must "ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. Third, a court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.

If a defendant satisfies each of the three requirements, a district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A). Alternatively, if a district court determines that a defendant fails to satisfy any of the three steps, it need not address the others

before denying the motion. *See Elias*, 984 F.3d at 519; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

### A. Exhaustion of Administrative Remedies

Prior to December 2018, motions for compassionate release could only be made by the Director of the BOP. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, if the BOP does not file for compassionate release, a prisoner must satisfy a mandatory condition to move for such relief on their own behalf. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition").

Here, Bolden suggests that he exhausted his administrative remedies because Warden Quintana failed to respond to his August 2020 request, by counsel, for compassionate release. DN 188 at 7-8. The United States does not oppose Bolden's position. DN 191 at 5-6. In fact, a heading in the United States' Response states that "Bolden has [e]xhausted his [a]dministrative [r]emedies." DN 191 at 5. Accordingly, we will proceed with the understanding that Bolden satisfied exhaustion and consider his motion.

### B. Extraordinary and Compelling Reasons

As mentioned previously, 18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's sentence if the court finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements

issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). But neither § 3582(c)(1)(A)(i) nor any other part of the statute define the phrase "extraordinary and compelling reasons."

Rather than provide a statutory definition for the phrase, Congress instructed the Sentencing Commission, in a different statute, as part of its statutory duties "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission released its only policy statement related to compassionate release motions in 2006 and included an application note, which provided that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2006). Since that time, the Sentencing Commission has amended the commentary to describe situations where extraordinary and compelling reasons exist, but § 1B1.13 itself has never been amended to define "extraordinary and compelling reasons." Currently, the Commentary to U.S.S.G. § 1B1.3 describes four circumstances which constitute "extraordinary and compelling reasons" for a sentence reduction:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>> (A) Medical Condition of the Defendant.—
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>> (ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(I) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018).

After Congress passed the First Step Act in December 2018, there was an open question of whether § 1B1.13 remained an applicable policy statement for compassionate relief motions brought directly by inmates because the Guidelines suggest that § 1B1.13 only applies to motions brought by the BOP. *See Ruffin,* 978 F.3d at 1006-08. The United States Court of Appeals for the Sixth Circuit resolved the issue in *Jones* by holding that "the passage of the First Step Act render[s] § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release."[2] *Jones*, 980 F.3d at 1109. As a result of this finding, the Sixth Circuit announced that

---

[2] Similarly, the United States Court of Appeals for the Second, Fourth, Seventh, and Tenth Circuit, along with a host of district courts, have concluded that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants. *See e.g., United States v. Brooker*, 976

"district courts have full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Id.*

Since *Jones*, the Sixth Circuit has reaffirmed its position that the policy statements in § 1B1.13 do not constrain district courts in considering requests properly filed by defendants for compassionate release under the First Step Act. *See e.g., Elias,* 984 F.3d at 519 ("we hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions"); *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) ("§ 1B1.13 is not an applicable policy statement for defendant-filed motions for compassionate release"). Nonetheless, we note that we may turn to U.S.S.G. § 1B1.13 for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Elias,* 984 F.3d at 519–20 ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative").

Having clarified the analytical framework necessary for this Court to determine the existence of "extraordinary and compelling reasons," we now proceed to the merits of Bolden's motion. Bolden argues that the First Step Act's changes to 18 U.S.C. § 924(c), as well as his age at the time of the offenses and rehabilitation since incarceration, constitute extraordinary and compelling reasons for compassionate release. DN 188 at 16-22, 192 at 3-8. On the other hand, the

---

F.3d 228, 236-37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 834-37 (10th Cir. 2021).

United States argues that the changes to § 924(c) do not qualify as an extraordinary and compelling reason because Congress did not make the amendments to § 924(c) retroactive. DN 191 at 6-12.

Along with expanding access to compassionate release, the First Step Act amended § 924(c) "to eliminate the 'stacking' of mandatory-minimum sentences for successive violations charged in the same indictment." *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *1 (E.D. Mich. Aug. 13, 2020). Prior to the First Step Act, § 924(c)'s "stacking" provision required a district court to impose consecutive sentences of either twenty or twenty-five years imprisonment for second or subsequent convictions of the statute, even if those convictions occurred at the same time as a defendant's first conviction under the statute. *See United States v. Young*, 458 F. Supp. 3d 838, 846 (M.D. Tenn. 2020) (citing 18 U.S.C. § 924(c) (1996)) ("Whoever, during and in relation to any crime of violence . . ., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . ., be sentenced to imprisonment for five years. . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years").[3] Now, the escalating mandatory-minimum sentences under § 924(c) can only be "stacked" if a defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction. *See id.* ("an intervening conviction is now necessary to trigger the harsh second-conviction penalties").

Unlike other statutory amendments effectuated by the First Step Act, though, Congress declined to make the amendments to § 924(c) retroactive. Section 403(b) of the First Step Act states

[3] On November 13, 1998, President Bill Clinton signed into law the Criminal Use of Guns Act, commonly known as the "Bailey Fix." Criminal Use of Guns Act, Pub. L. No. 105–386, 112 Stat 3469 (1998). This legislation amended 18 U.S.C. § 924(c) to add new tiered sanctions for brandishing or discharging a firearm and increased the mandatory minimum for a second or subsequent conviction under the statute from twenty to twenty-five years imprisonment. *Id.*; *see also* Paul J. Hofer, et al., *Sentencing for the Possession or Use of Firearms During a Crime*, U.S. Sent'g Comm'n 1, 6-11 (Jan. 6, 2000), https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/firearms/20000106-use-firearms-during-crime/firearms.pdf.

8

that "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b), PL 115- 391, 132 Stat 5194 (Dec. 21, 2018) (codified as amended at 18 U.S.C. § 924). The Sixth Circuit has interpreted this subsection to permit defendants to benefit from § 403 if they were awaiting resentencing upon the First Step Act's enactment, but not to defendants whose cases were pending on direct appeal at the time of enactment. *See e.g., United States v. Henry*, 983 F.3d 214 (6th Cir. 2020); *United States v. Richardson*, 948 F.3d 733, 736 (6th Cir. 2020), cert. denied, 141 S. Ct. 344, 208 L. Ed. 2d 79 (2020).

Nevertheless, the Sixth Circuit, relying on a plethora of decisions around the country involving First Step Act § 403 and § 924(c), recently held that "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." *United States v. Owens*, No. 20-2139, 2021 WL 1811538, at *4 (6th Cir. May 6, 2021). In so ruling, the Sixth Circuit endorsed a "middle path" and distinguished its statements in *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) and *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021) that the non-retroactive amendments to 21 U.S.C. § 841 outlined in § 401 of the First Step Act were not extraordinary and compelling reasons for relief.[4] *See id*. at *4-7. Thus, we find that § 403's non-retroactivity does not

---

[4] The criminal defendants in *Tomes* and *Willis* argued that the disparity between the sentence they received and the one they would have been given today operated, on its own, as an extraordinary and compelling reason to warrant a sentence reduction. *See Tomes*, 990 F.3d at 505; *Wills*, 991 F.3d at 723-24. The Sixth Circuit was unpersuaded that the disparity constituted an extraordinary and compelling reason and declined to circumvent Congress' decision to limit the retroactivity of the First Step Act's reforms. *See id.* Unlike the defendants in *Tomes* and *Wills*, Owens' motion for compassionate release argued that the First Step Act's changes to § 924(c), along with facts suggesting that he received an effective life sentence largely as a penalty for choosing to go to trial and his remarkable rehabilitation, constituted extraordinary and compelling reasons for compassionate release. *See Owens*, 2021 WL 1811538, at *2. The district court did not agree and concluded that the disparity between the sentence that Owens received and the sentence he would receive today was not an extraordinary and compelling reason for relief because the amendments to § 924(c) were not retroactive. *See id.* On appeal, the Sixth Circuit reversed and announced that district courts may consider the disparity

prevent the Court, as part of the extraordinary and compelling reasons calculation, from examining the disparity between the sentence Bolden actually received and the sentence that he would have received if the First Step Act applied because he asserts the disparity argument in combination with other factors.

Here, Bolden was sentenced to 378 months imprisonment, 300 of which were based on his § 924(c) violations. DN 123 at 2. If he were sentenced today, the United States suggests that Bolden could receive 120 or 168 months imprisonment, depending on whether he would be subject to the seven-year mandatory sentence for brandishing, because there was no intervening conviction that would be required to trigger the second-conviction sentencing enhancement under the current version of § 924(c). DN 191 at 4. Therefore, Bolden's sentence is now at least eleven years longer than what Congress has set as the adequate level of punishment for comparable conduct, resulting in a gross disparity between the sentence initially levied and the type of sentence that would be imposed if Bolden were convicted of such conduct today.

In addition to the change in law, Bolden's evidence of significant rehabilitation supports a finding that extraordinary and compelling reasons justify compassionate release. All accounts indicate that Bolden has approached his term of imprisonment with optimism and a desire to transform his life. The record indicates that Bolden has completed over forty educational courses, obtained his GED, and earned Associates Degrees in Applied Science and Construction Carpentry. DN 188-1 at 2-3, 188-2 at 2-3. The record also evidences that Bolden became an ordained minister before later receiving a ministry license. DN 188-2 at 4, 188-3 at 2-3. Additionally, several letters from inmates at FMC Lexington attest to Bolden's positive attitude and responsible conduct, as well

---

between a defendant's actual sentence and the sentence that he or she would have received based on changes to § 924(c) when this is not the only factor asserted by defendants to justify compassionate release. *Id.* at *4-7.

as his willingness to serve as a source of support and spiritual guidance. DN 188-4 at 2-4, 188-5 at 2-3, 188-6 at 2. Further, the United States' Response, which describes Bolden as a "model inmate" whose rehabilitation is "commendable," "extensive," and "laudable," bolsters his rehabilitation argument. DN 191 at 1, 11, 12.   Therefore, while rehabilitation alone does not constitute an extraordinary and compelling reason for relief, Bolden's rehabilitation, which is being considered in conjunction with other factors, contributes to a finding of extraordinary and compelling reasons justifying compassionate release. *See Owens,* 2021 WL 1811538, at *7 (the district court "should have determined whether the combination of all three factors," (1) the First Step Act's changes to § 924(c), (2) the fact that Owens received an effective life sentence as a penalty for going to trial, and (3) his remarkable rehabilitation, "warranted compassionate release"); *United States v. Johnson,* No. 3:02-CR-00068-TBR, 2020 WL 6121162, at *3 (W.D. Ky. Oct. 16, 2020) (citing *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *8 (W.D. Tenn. June 8, 2020) ("although rehabilitation cannot, alone, justify a reduction in sentence, it is relevant to whether a reduction is warranted").

Accordingly, we find that a combination of factors—Bolden's age at the time of his offense, his rehabilitation since being incarcerated, the incredible length of the mandatory-minimum sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce his sentence.

### C.  18 U.S.C. § 3553(a) Factors

In addition to demonstrating that he is statutorily eligible for a sentence reduction based on the extraordinary and compelling reasons outlined above, Bolden must demonstrate that he is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g), and that the factors set forth in 18 U.S.C. §3553(a) support a reduction. *See Jones*, 980 F.3d at 1108

11

(citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)) ("step three, . . . 'instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case'"). To determine whether the factors weigh in favor of a reduction, the Court reviewed the nature and circumstances of Bolden's offense, along with his history and characteristics. 18 U.S.C. § 3553(a). The Court also assessed the need for the sentence imposed to reflect the seriousness of Bolden's offense, promote respect for the law, provide a just punishment for his offense, afford adequate deterrence, and to provide him with needed education and training, medical care, or other correctional treatment. *Id.* Further, the Court considered the danger to the public as the result of any reduction in Bolden's sentence, the seriousness of his offenses, and the need to protect the public. *Id.* And the Court reviewed the kinds of sentences available, the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims. *Id.*

Here, the Court finds that a sentence reduction is appropriate. Although Bolden's offenses are undeniably serious and he was convicted in state court on drug, assault, and gun possession charges prior to pleading guilty in the underlying case, the punishment he received is significantly greater than necessary to accomplish the goals of respect for the law, just punishment, deterrence, and the protection of the public. DN 124 at 7-9, 13-14. Further, Bolden was eighteen years old at the time of the offense and has spent his entire adult life, roughly twenty-two years, in prison. DN 124 at 7-9, 188 at 6-7.

Additionally, Bolden's efforts at rehabilitation to some degree offset his criminal history. As noted above, the record reflects that Bolden obtained his GED, earned two associate degrees, became an ordained and licensed minister, serves as a mentor for other inmates, and has only been

cited for one disciplinary infraction during his twenty years of incarceration, which did not result in the loss of any good time credit. DN 188-1, 188-2, 188-3, 208 at 3.

Likewise, the record is devoid of any evidence indicating that Bolden poses a risk to the public if he were released at this time or that he would not be a contributing member of his community. Bolden's motion includes two letters from his family, which are not controverted by the United States, indicating that they will assist in his endeavor to secure employment if he is released. DN 188-7 at 2, 188-8 at 2-3. Further, a sealed memorandum prepared by Probation indicates that Bolden's release plan provides a satisfactory residence and confirms that the Eastern District of Kentucky United States Probation Office will provide supervision if Bolden is release from custody. DN 208.

Accordingly, the Court finds that the § 3553(a) factors and § 4142(g) support a reduction in Bolden's sentence.

### III. <u>CONCLUSION</u>

For the reasons discussed herein, Bolden's motion for compassionate release will be granted by separate order.

June 1, 2021

Charles R. Simpson III, Senior Judge
United States District Court

13